UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------------X
                                                      :

JANE DOE, JOHN DOE,                    :

                       Plaintiffs,      :

                                                          :           24-cv-5922 (LJL)

      -v-                        :

                                                          :        OPINION AND ORDER

OXFORD HEALTH PLANS (NY), INC., OXFORD   :
HEALTH INSURANCE, INC., OXFORD HEALTH   :
PLANS, LLC, UNITEDHEALTHCARE INSURANCE  :
COMPANY, UNITEDHEALTH GROUP            :
INCORPORATED,                               :

                       :

                   Defendants.    :

                       :

-----------------------------------------------------------------------X

LEWIS J. LIMAN, United States District Judge:

       Defendants Oxford Health Plans (NY), Inc., Oxford Health Insurance, Inc., Oxford

Health Plans, LLC, United Healthcare Insurance Company, and UnitedHealthcare Group

Incorporated ("Defendants") move, pursuant to Federal Rule of Civil Procedure 12(b)(6), to

dismiss the complaint.  Dkt. No. 26.

       For the following reasons, the motion to dismiss is granted in part and denied in part.

## BACKGROUND

       For purposes of this motion, the Court accepts as true the well-pleaded allegations of the

complaint as supplemented by the documents incorporated by reference.

       John Doe is a participant and subscriber under an employee welfare benefits plan which

provided healthcare benefits issued by Oxford Health Insurance, Inc. ("OHI") to John Doe's

employer, Reardon & Sclafani, PC, under plan number 1305759 (the "Plan").  Dkt. No. 1 ¶ 7;

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:  04/14/2025__

Dkt. No. 27-1.  Jane Doe is a beneficiary covered under the Plan, with the member number xxxxx5765.  Dkt. No. 1 ¶¶ 8, 21.[1]

OHI is the insurer and administrator of the Plan.  *Id.* ¶ 11; Dkt. No. 27-1.  It underwrites, administers, and operates employee welfare plans and is governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq.*, in doing so.  Dkt. No. 1 ¶ 9.  It handles all claims for healthcare benefits and makes all claim determinations under the Plan.  *Id.* ¶ 24.  UnitedHealthGroup Incorporated is the ultimate parent of OHI and OHP.  *Id.* ¶ 15.  Oxford Health Plans, LLC ("OHP") is also an ultimate parent of OHI.  *Id.* ¶ 13.[2]  UnitedHealthCare Insurance Company ("UHIC") is the parent of OHI.  *Id.* ¶ 14.  Oxford Health Plan (NY), Inc. ("OHPNY") is an affiliate of OHI.  *Id.* ¶ 12.[3]

Samieh Rizk, MD, is a board-certified plastic surgeon practicing in New York, New York.  *Id.* ¶¶ 25, 27.  He practices through Park Avenue Facial Surgery.  *Id.* ¶ 28.  Park Avenue Facial Surgery is accredited as a certified surgical facility by the Joint Commission on

---

[1] Although not stated in the complaint, Jane Doe is the daughter of John Doe.  Dkt. No. 35-3.

[2] The complaint does not explain how OHP and UnitedHealthGroup Incorporated can both be the "ultimate parent" of OHI.

[3] Taken as true, the allegations of the complaint appear to establish a structure in which UnitedHealthGroup Incorporated is the parent of OHP, OHP is the parent of UHIC, UHIC is the parent of OHI, and OHPNY is a subsidiary of one of the parent entities.  Defendants' Local Rule 7.1 statements confirm that UnitedHealthGroup Incorporated is the parent of OHP, Dkt. No. 39, and clarify that OHP owns OHPNY, Dkt. No. 38.  The Local Rule 7.1 statements do not reflect that UHIC is the parent of OHI or is at all affiliated with OHP, as the Local Rule 7.1 statement for UHIC places it in a separate subsidiary relationship to UnitedHealthGroup Incorporated via several nonparty entities.  Dkt. Nos. 37, 40.  The Local Rule 7.1 statements leave the exact relationship of OHI to the defendant entities unclear.  The Local Rule 7.1 statement for OHI states vaguely that OHI is "a wholly-owned indirect subsidiary of UnitedHealthGroup Incorporated," but does not identify any other affiliates, subsidiaries, or parent corporations for OHI.  Dkt. No. 37.  Plaintiffs have submitted a Local Rule 7.1 statement from a different litigation stating that OHI is actually a subsidiary of OHPNY, dated August 2014.  Dkt. No. 35-5.

Accreditation of Healthcare Organizations, an accrediting body recognized by OHI as authoritative.  *Id.* at 28.

On April 14, 2022, Jane Doe underwent medically necessary rhinoplasty with five costal irradiated rib cartilage grafts with AlloDerm overlay performed by Dr. Rizk at his Manhattan office suite under general anesthesia.  *Id.* ¶ 31.  The operation was performed at the offices of Park Avenue Facial Surgery.  *Id.* ¶ 36.  Dr. Robert Scolnick, a board-certified anesthesiologist licensed to practice medicine in the State of New York, performed the anesthesia for the procedure.  *Id.* ¶ 33.  Drs. Rizk and Scolnick were out-of-network providers under the Plan, *id.* ¶¶ 25, 33, which provides out-of-network benefits to Plan participants, *id.* ¶ 26.

Dr. Rizk's fee for his services was $40,000 and is paid in full.  *Id.* ¶ 34.  Dr. Scolnick's fee for his services was $1,500 and is paid in full.  *Id.* ¶ 35.  The facility fee for the surgery at Park Avenue Facial Surgery was $5,000 and is paid in full.  *Id.* ¶ 36.

On October 12, 2022, John Doe spoke with an OHI representative and was told to use codes 30410 and 30468 to seek reimbursement for the rhinoplasty and that pre-qualification was not necessary.  *Id.* ¶ 37.  On October 31, 2022, Plaintiffs submitted the invoices for the services of Dr. Rizk, Dr. Scolnick, and Park Avenue Facial Surgery to Defendants for reimbursement.  *Id.* ¶¶ 38, 40.  On December 7, 2022, John Doe spoke to an OHI representative who requested a copy of Dr. Rizk's operative report, and a corrected claim was submitted with the operative report.  *Id.* ¶ 42.

On December 21, 2022, Defendants denied Dr. Rizk's fee reimbursement claim without explanation.  *Id.* ¶ 43.  On December 22, 2022, Defendants issued an explanation of benefits (EOB) for Dr. Scolnick's claim stating that "service time modified remaining minutes greater than 60 from the add on code."  *Id.* ¶ 44.  On December 23, 2022, Defendants issued an EOB for

Dr. Rizk's claim stating that it was denied for "claim already submitted." *Id.* ¶ 45. On February 2, 2023, Defendants issued further EOBs stating that Dr. Scolnick's claim was denied for invalid coding under "AMA guidelines," and that "more information [was] needed" as to Dr. Rizk's claim, without specificity. *Id.* ¶ 47.

On March 4, 2023, OHI wrote to "the beneficiary" that the "Manhattan Facial" claim was "paid," apparently referring to the claim for Park Avenue Facial Surgery, but no payment was made. *Id.* ¶ 50. On March 15, 2023, OHI issued an EOB denying the "Manhattan Facial" claim, stating "coding improper." *Id.* ¶ 52. On March 16, 2023, OHI sent a letter advising that "we did not receive the non par as requested," without explaining what "non par" means. *Id.* ¶ 54. When John Doe spoke with an OHI representative, the representative could not explain to what "non par" referred. *Id.* ¶ 55. The representative asked for an updated W-9 for Dr. Scolnick and a letter of medical necessity from Dr. Rizk. *Id.*

On April 7, 2023, an OHI representative stated that claims were denied on February 1, 2023, and March 15, 2023, because they were "without medical necessity," and that they were under medical review. *Id.* ¶ 58. Plaintiff never received information about these denials and never received the results of any medical review. *Id.*

On April 21, 2023, OHI issued an EOB denying Dr. Rizk's claim based on the "setting" in which services were performed. *Id.* ¶ 59. On April 22, 2023, Plaintiffs appealed Dr. Rizk's and Scolnick's claims. *Id.* ¶ 60. John Doe spoke to an OHI representative who advised that reconstruction of the nose cannot be performed in an "office setting." *Id.* ¶ 61. On June 2, 2023, OHI denied the appeal of Dr. Rizk's claim, again referencing that the claim was not "reimbursable in this setting" and citing section XXVII, subsection 22 of the Certificate of Coverage ("COC"). *Id.* ¶ 63. Subsection 22 states that "we may develop standards" to

"determine whether . . . surgery was Medically Necessary to treat Your illness or injury." *Id.*; Dkt. No. 27-1 at 101. Plaintiffs were not provided with the "standards" relied upon. Dkt. No. 1 ¶ 63.

Also on June 2, 2023, OHI issued an additional EOB for Dr. Scolnick's claim requesting medical records, an itemized statement, the providers name, and dates of service, all of which had been previously provided. *Id.* ¶ 64.

On June 8, 2023, an OHI representative advised John Doe that the denial for Dr. Rizk's claim "overlooked code 30465" as code 30410 "cannot be submitted alone." *Id.* ¶ 66. The representative updated the coding and resubmitted the claim. *Id.* ¶ 66.

On June 12, 2023, OHI stated that it had reprocessed Dr. Scolnick's claim and issued John Doe a check for $147.06 towards Dr. Scolnick's $1,500 fee. *Id.* ¶ 68. John Doe spoke to three OHI representatives, none of whom were able to explain how OHI arrived at the sum of $147.06. *Id.* ¶ 69–70. On October 16, 2023, OHI issued a letter affirming the denial of the balance of Dr. Scolnick's fee, on the basis that that "[f]or Facilities, the Allowed Amount will be 140% of the Medicare Amount." *Id.* ¶ 81. The "Medicare Amount" was not provided. *Id.* Plaintiffs requested all information and materials OHI relied on to reach this determination, but the only material eventually produced by OHI was a copy of the COC. *Id.* ¶¶ 82, 90. Plaintiffs then submitted a second-level appeal of this claim on December 13, 2023. *Id.* ¶ 84.

On January 22, 2024, OHI issued a letter stating it had upheld the denial of Dr. Rizk's claim on the basis that the code "is not separately reimbursable in this setting." *Id.* ¶ 89. Plaintiffs again asked for all materials relied on in reaching this decision, and OHI again provided only the COC. *Id.* ¶ 88. On February 10, 2024, Plaintiffs submitted a second-level appeal of Dr. Rizk's claim. *Id.* ¶ 92. On February 27, 2024, OHI sent a letter stating that it

upheld the denial of Dr. Rizk's claim for the same reasons stated originally and that Plaintiffs had exhausted their appeals. *Id.* ¶ 93.

On May 13, 2024, OHI also denied the second-level appeal of Dr. Scolnick's claim for untimeliness. *Id.* ¶ 96. However, OHI then followed up with a letter of May 16, 2024, stating that Dr. Scolnick's claim was a "facilities" fee and was denied based on section XXVII, subsection 22, of the COC, the provision which states that "we may develop standards" to "determine whether . . . surgery was Medically Necessary to treat Your illness or injury." *Id.* The letter also stated that Plaintiffs had exhausted their administrative appeals. *Id.* In the end, OHI ultimately paid only $147.06 as reimbursement of Dr. Scolnick's $1,500 fee and did not provide any reimbursement for Dr. Rizk or Park Avenue Facial Surgery.

## PROCEDURAL HISTORY

On August 5, 2024, Plaintiffs brought suit against Defendants, alleging a single claim for denial of benefits under Section 502(a)(1)(B) of ERISA, 29 U.S.C. § 1132(a)(1)(B). Dkt. No. 1. Plaintiffs claimed, *inter alia*, that Defendants breached their fiduciary duty to Plaintiffs by failing to follow the terms of the Plan and ERISA's mandate to set for the specific reasons for denials, *id.* ¶¶ 100–101, that denying reimbursement of fees for Dr. Rizk and Park Avenue Facial Surgery in light of the partial payment of Dr. Scolnick's fee is inconsistent and therefore arbitrary and capricious, *id.* ¶ 102, that the reliance by OHI on the undefined "setting" for the underlying surgical procedure was without support in the plain language of the COC, *id.* ¶ 103, and that OHI's continuing failure to accept that Dr. Scolnick's fee is for anesthesia services and not a "facilities" fee constituted mismanagement and neglect, *id.* ¶ 104.

Defendants filed this motion to dismiss on November 15, 2024. Dkt. No. 26. Defendants filed a memorandum of law in support of the motion and a declaration in support attaching the Plan. Dkt. Nos. 27–28. Plaintiffs filed a memorandum of law and a declaration of counsel in

opposition to the motion, attaching five exhibits, on January 10, 2025. Dkt. Nos. 35–36. Defendants filed a reply memorandum of law in further support of their motion on February 7, 2025. Dkt. No. 44.

## LEGAL STANDARD

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted, a complaint must include "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint must offer more than "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement." *Twombly*, 550 U.S. at 555, 557. The ultimate question is whether "[a] claim has facial plausibility, [*i.e.*,] the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Put another way, the plausibility requirement "calls for enough fact to raise a reasonable expectation that discovery will reveal evidence [supporting the claim]." *Twombly*, 550 U.S. at 556; *see also Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 46 (2011).

On a motion to dismiss, a district court may consider documents that are incorporated by reference, of which judicial notice may be taken, or which are integral to the complaint. *See Gray v. Wesco Aircraft Holdings, Inc.*, 454 F. Supp.3d 366, 382–83 (S.D.N.Y. 2020), *aff'd*, 847 F. App'x 35 (2d Cir. 2021). In most instances, "the incorporated material . . . is a contract or other legal document containing obligations upon which the plaintiff's complaint stands or falls, but which for some reason . . . was not attached to the complaint." *Global Network Comm'ns,*

7

*Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006).  The complaint here relies upon the terms and effects of the Plan.  Accordingly, the Plan is incorporated by reference and the Court may refer to it without converting this motion to dismiss into a motion for summary judgment. *See Park Ave. Podiatric Care, P.L.L.C. v. Cigna Health & Life Ins. Co.*, 2023 WL 2478642, at *2 (S.D.N.Y. Mar. 13, 2023), *reconsideration denied*, 2023 WL 4866045 (S.D.N.Y. July 31, 2023), *aff'd*, 2024 WL 2813721 (2d Cir. June 3, 2024); *Norman Maurice Rowe, M.D., M.H.A., L.L.C. v. UnitedHealthcare Serv., LLC*, 2024 WL 4252045, at *3 (E.D.N.Y. Sept. 20, 2024); *Park Ave. Aesthetic Surgery, P.C. v. Empire Blue Cross Blue Shield*, 2021 WL 665045, at *1 (S.D.N.Y. Feb. 19, 2021).

## DISCUSSION

Section 502(a)(1)(B) of ERISA provides that "[a] civil action may be brought by a participant or beneficiary . . . to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits."  29 U.S.C. § 1132(a)(1)(B).  "To prevail under § 502(a)(1)(B), a plaintiff must show that (1) the plan is covered by ERISA; (2) plaintiff is a participant or beneficiary of the plan; and (3) the plaintiff was wrongfully denied a [benefit] owed under the plan."  *Giordano v. Thomson*, 564 F.3d 163, 168 (2d Cir. 2009); *see Jeffrey Farkas, M.D., LLC v. Grp. Health Inc.*, 2019 WL 657006, at *6 (S.D.N.Y. Feb. 1, 2019); *Guerrero v. FJC Sec. Servs. Inc.*, 423 F. App'x 14, 16 (2d Cir. 2011) (summary order).[4]

---

[4] A plaintiff must also demonstrate that she exhausted administrative remedies.  *See Pelosi v. Schwab Cap. Markets, L.P.*, 462 F. Supp. 2d 503, 509 (S.D.N.Y. 2006).  There is no dispute that Plaintiffs have satisfied that requirement.

Defendants argue that: (1) John Doe lacks constitutional and statutory standing; (2) the complaint should be dismissed for failure to allege a Plan provision OHI has violated; and (3) in any event, the complaint fails to state a claim against any Defendant other than OHI.

## I.      Standing

As to Defendants' first argument, John Doe does have constitutional and statutory standing to bring this action.

Constitutional standing requires the Plaintiff to have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). Statutory standing refers to the issue of "whether the particular plaintiff 'has a cause of action under the statute.'" *Am. Psychiatric Ass'n v. Anthem Health Plans, Inc.*, 821 F.3d 352, 359 (2d Cir. 2016) (quoting *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 128 (2014)). A court must determine, "using traditional tools of statutory interpretation," whether the plaintiff's claim falls "within the zone of interests protected by the law invoked." *Bank of Am. Corp. v. City of Miami, Fla.*, 581 U.S. 189, 197 (2017) (quoting *Lexmark*, 572 U.S. at 127, 129). The statute under which John Doe brings his claim here states that a "participant or beneficiary" may bring an action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits." 29 U.S.C. § 1132(a)(1)(B).

Defendants argue that John Doe lacks constitutional and statutory standing because the alleged harm, "purported under-reimbursement of claims submitted for Jane Doe," was a harm to Jane Doe, not to John Doe. Dkt. No. 28 at 11; Dkt. No. 44 at 9. However, this misconceives the nature of the relevant injury. The relevant injury is not that Jane Doe lost money, but rather that John Doe did not receive the benefit of his bargain under the Plan. "A claim under §

1132(a)(1)(B), 'in essence, is the assertion of a contractual right.'"  *Feifer v. Prudential Ins. Co. of Am*., 306 F.3d 1202, 1210 (2d Cir. 2002) (quoting *Strom v. Goldman, Sachs & Co.,* 202 F.3d 138, 142 (2d Cir. 1999)); *see US Airways, Inc. v. McCutchen*, 569 U.S. 88, 100 (2013) (stating that "ERISA's principal function" is "to 'protect contractually defined benefits'" (quoting *Massachusetts Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 148 (1985)).  Thus, Circuit courts have repeatedly held that even if a plaintiff has never been billed for a service and any benefits will go solely to his medical provider, he has standing to sue.  *See Mitchell v. Blue Cross Blue Shield of N. Dakota*, 953 F.3d 529, 536 (8th Cir. 2020) (collecting cases).  The reason for this is that "plan participants are contractually entitled to plan benefits" and "the wrongful denial of plan benefits breaches the parties' contract and deprives the participant of the benefit of their bargain."  *Mitchell*, 953 F.3d at 536; *see Med. Soc'y of the State of New York v. UnitedHealth Grp. Inc*., 332 F.R.D. 138, 147 (S.D.N.Y. 2019) ("[T]he denial of plan benefits is a concrete injury for Article III standing even when patients were not directly billed for their medical services." (quoting *Springer v. Cleveland Clinic Emp. Health Plan Total Care*, 900 F.3d 284, 287 (6th Cir. 2018))).

The same logic supports the standing of a plan participant to sue for the denial of benefits to a beneficiary.  "It is 'axiomatic' that a party to an agreement has standing to sue a counter-party who breaches that agreement, even where some or all of the benefits of that contract accrue to a third party."  *Frontier Commc'ns of N.Y., Inc. v. Int'l Bhd. of Elec. Workers*, 2008 WL 1991096, at *3 (S.D.N.Y. May 6, 2008); *see United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO/CLC v. Cookson Am., Inc*., 710 F.3d 470, 475 (2d Cir. 2013) ("That this benefit accrues to third parties, namely, the retirees, does not change the fact that the Union has negotiated for the benefit and has incurred

obligations in order to secure it.").  When an employee joins a plan that includes coverage for dependents or other beneficiaries, part of the benefit of his bargain is that coverage will in fact be provided.  Denial of this benefit is an injury to the employee, even if the coverage is for others.  *See Richard K. v. United Behavioral Health*, 2019 WL 3083019, at \*15 (S.D.N.Y. June 28, 2019) (holding participant had statutory standing to seek reimbursement for care provided to beneficiary), *report and recommendation adopted sub nom. Richard K. v. United Behav. Health*, 2019 WL 3080849 (S.D.N.Y. July 15, 2019); *Michael W. v. United Behav. Health*, 420 F. Supp. 3d 1207, 1220 (D. Utah 2019) (same); *Lisa O. v. Blue Cross of Idaho Health Serv. Inc.*, 2014 WL 585710, at \*3 (D. Idaho Feb. 14, 2014) (same).

This injury confers both constitutional and statutory standing.  Constitutionally, it has long been recognized that "a party to a breached contract has a judicially cognizable injury for standing purposes" and "[a] court can redress this injury by awarding the contractual benefits to which the participant is entitled."  *Mitchell*, 953 F.3d 536; *see Eletson Holdings, Inc. v. Levona Holdings Ltd.*, 731 F. Supp. 3d 531, 571 (S.D.N.Y. 2024) ("History and precedent support that a person whose contractual rights have been violated has standing to sue the breaching party, regardless of whether the non-breaching party has suffered additional harm."); *United Steel, Paper & Forestry*, 710 F.3d at 475.  A participant has a concrete stake in ensuring that benefits are paid out under the terms of his Plan.[5]  Statutorily, the language of the relevant provision

---

[5] The holding that standing exists under these circumstances is consistent with *Thole v. U. S. Bank N.A*, in which the Supreme Court held that ERISA beneficiaries lacked constitutional standing to sue for an alleged breach of fiduciary duty that could not possibly have affected their benefits under the Plan.  590 U.S. 538, 541 (2020).  The premise of that decision was that the alleged injury could not in any way deprive the participants of the benefit of their bargain.  *Id.* ("If Thole and Smith were to win this lawsuit, they would still receive the exact same monthly benefits that they are already slated to receive, not a penny more.").  By contrast, the refusal to pay money to beneficiaries deprives the participant of a clear and concrete benefit of his bargain.

speaks not only to recovery of money, but also to a participant's ability to "enforce his rights under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). This language sounds in breach of contract, and the Supreme Court has stated that "ERISA's principal function" is "to 'protect contractually defined benefits.'" *US Airways*, 569 U.S. at 100 (*Massachusetts Mut. Life*, 473 U.S. at 148). If an ERISA plan provides an employee with the right to have certain benefits paid to a spouse or dependent, Section 1132(a)(1)(B) allows the employee to sue to enforce this right.

Here, John Doe pled that he was a "participant and subscriber" to the Plan issued to his employer. Dkt. No. 1 ¶ 7. He additionally pled that "the policy premium was paid in full and the Plan remains in force," *id.* ¶ 18, that Jane Doe is a beneficiary, *id.* ¶ 21, and that Defendants failed to provide benefits for her care that ought to have been provided under the Plan, *id.* ¶¶ 39, 63, 67, 74. "The wrongful denial of plan benefits breaches the parties' contract and deprives the participant of the benefit of their bargain," regardless whether the bargain was to provide benefits for care to John Doe himself or to his beneficiary Jane Doe. *Mitchell*, 953 F.3d at 536. John Doe has statutory and constitutional standing as the Plan participant and subscriber to ensure that Plan benefits are paid according to the terms of the Plan.[6]

It is not fatal to John Doe's constitutional and statutory standing that the benefits under the Plan for Jane Doe's surgery may not be payable directly to him and may instead be owed to Jane Doe. Regardless whether there are "benefits due to him," John Doe has statutory standing

---

[6] John Doe may also have constitutional standing due to his financial interest in reimbursement for Jane Doe's medical bills. He has pled that he is the Plan subscriber, Dkt. No. 1 ¶ 7, that the medical bills have been paid in full, *id.* ¶¶ 34–36, and the $147.06 paid out by OHI "as reimbursement" was paid to him, *id.* ¶¶ 68–69. If John Doe would personally receive reimbursement from the Plan upon the success of this lawsuit, he would have a financial interest in the action which would confer constitutional standing. *See Richard K.*, 2019 WL 3083019, at *14 (stating that parents had constitutional standing because they "were required to and did pay for [the child's] uncovered medical expenses").

"to enforce his rights under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B).  Those rights

include the right to have the Plan reimburse his specified beneficiaries.  Thus, John Doe's

standing does not rest on the question whether he has paid Jane Doe's medical bills.  As several

courts have held, a parent does not have standing to sue under ERISA simply because the parent

has paid the medical bills of the child and desires reimbursement.  *See Lightfoot v. Principal Life

Ins. Co*., 2011 WL 2036649, at *1–4 (W.D. Okla. May 24, 2011); *Ray v. PPOM, L.L.C*., 2005

WL 1984470, at *2 (E.D. Mich. Aug. 9, 2005).[7]  John Doe's standing rests on his status as

participant; the question of whether he or his daughter recovers benefits raises a merits question.

Here, Plaintiffs' complaint suggests that the Plan provides for reimbursement to be paid to John

Doe.  *See* Dkt. No. 1 ¶¶ 68–69 (stating that reimbursement check for $147.06 was paid to John

Doe).  If such are the terms of the Plan, John Doe may sue for reimbursement to be paid to him.

If the terms of the Plan provide for reimbursement to be made to Jane Doe, John Doe may sue

for reimbursement to be paid to her.  But if the Plan provides for payment to Jane Doe, John Doe

may not recover in his personal capacity.  That would put the Plan at risk of double payment and

would not "enforce his rights under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B).  Here,

---

[7] Although the holding reached in *Ray* appears inconsistent with the result here, that case did not address the issue whether a participant has standing to sue to enforce his Plan rights under principles of contract.  The argument made to the court was that a parent should have standing to sue for an adult child for the reason that the parent was liable for the child's medical bills.  *See Ray*, 2005 WL 1984470, at *2.  The court rejected this principle without considering, because it was not raised, the fact that as the Plan participant the parent could have also suffered an injury by loss of the benefit of his bargain.  *See Ray*, 2005 WL 1984470, at *2 ("A parent of a plan beneficiary . . . does not have standing in her individual capacity to sue to enforce payment of medical benefits to another party solely on the grounds that [she] would be liable for payment of the medical bills if the plan does not pay them." (citation omitted)).  *Lightfoot* is clearly distinguishable from this case because in *Lightfoot* the parent sought to himself be reimbursed for payment of the child's medical bills, but the Plan clearly stated that payment was due to the child.  *Lightfoot*, 2011 WL 2036649, at *2.  Thus the parent was not seeking to enforce the terms of the Plan, but was seeking to recover "for equitable reasons."  *Id.*

Plaintiffs' complaint does not specify who should be paid but merely seeks reimbursement according to the Plan terms. *See* Dkt. No. 1 ¶ 111 (seeking that OHI "reimburse the Plaintiffs for said medical fees pursuant to the plain language of the COC"). John Doe has standing to seek this relief as the Plan participant.

## II.    Proper Defendants

Defendants are correct that Plaintiffs have not stated a claim against any Defendant other than OHI. "Claims to enforce the terms of a benefits plan under Sections 502(a)(1)(B) or (a)(3) of ERISA are properly brought against '(1) the plan, (2) the plan administrator, (3) the plan trustee, or (4) a claims administrator who exercises total control over claims for benefits.'" *Popovchak v. UnitedHealth Grp. Inc.*, 692 F. Supp. 3d 392, 417 (S.D.N.Y. 2023) (quoting *Bushell v. UnitedHealth Grp. Inc.*, 2018 WL 1578167, at *8 (S.D.N.Y. Mar. 27, 2018)); *see Chapman v. ChoiceCare Long Island Term Disability Plan*, 288 F.3d 506, 509–10 (2d Cir. 2002); *New York State Psychiatric Ass'n, Inc. v. UnitedHealth Grp.*, 798 F.3d 125, 133 (2d Cir. 2015). OHP, UHIC, UnitedHealthGroup Incorporated and OHPNY are not alleged to be administrators or trustees of the Plan, nor are they alleged to be claims administrators who exercise total control over benefits. The complaint specifically alleges that OHI, and not the other entities, handles all claims for healthcare benefits and makes all claims determinations under the Plan. Dkt. No. 1 ¶ 24. The other entities are parents and affiliates of OHI and therefore not proper parties to a Section 502(a)(1)(B) claim. *See Prestige Inst. for Plastic Surgery, PC v. Aetna, Inc.*, 2024 WL 4349012, at *4 (D. Conn. Sept. 30, 2024) ("Because Aetna is merely the parent company of [ALIC], it is not properly subject to suit for the non-payment of any benefits under the patient's plan." (citation omitted)); *Bushell*, 2018 WL 1578167, at *8 ("There is no precedent for the proposition that subsection (a)(1)(B) permits beneficiaries of a plan to sue the parent company of a proper defendant."); S.*M. v. Oxford Health Plans (N.Y.),*

*Inc.*, 94 F. Supp. 3d 481, 298 (S.D.N.Y. 2015) (refusing to hold entities liable under ERISA "simply due to their corporate relationship"), *aff'd sub nom. S.M. v. Oxford Health Plans (N.Y.)*, 644 F. App'x 81 (2d Cir. 2016)  OHI is the underwriter and the administrator of the Plan and is the proper Defendant.  Dkt. No. 1 ¶ 11; Dkt. No. 27-1 at 2, 4, 36, 42.

Plaintiffs note that the transmittal letter for the Plan contains a note that "Oxford insurance products are underwritten by Oxford Health Insurance, Inc.," and goes on to state "[a]dministrative services provided by Oxford Health Plans LLC," Dkt. No. 27-1 at 2.  However, Plaintiffs omit that immediately before the reference to "administrative services," the letter states: "Oxford HMO products are underwritten by Oxford Health Plans (CT), Inc. and Oxford Health Plans (NJ), Inc."  *Id.*  The language of the transmittal letter does not help Plaintiffs, because Plaintiffs did not allege that OHP is a Plan administrator, and administrator status is not established by a vague reference to "administrative services."  Dkt. No. 27-1 at 2.  Nor is it availing for Plaintiffs to claim that "on the record before the Court, the status of the Defendants as 'proper parties' cannot be determined."  Dkt. No. 36 at 10.  Under *Twombly* and *Iqbal*, Plaintiffs are to have a basis to name a party before they sue and not after.  *See Twombly*, 550 U.S. at 561 (rejecting the idea that a complaint could survive based on the "possibility that a plaintiff might later establish some 'set of [undisclosed] facts" to support recovery"); *MECO Elec. Co. v. Siemens Indus., Inc.*, 2022 WL 4085832, at *8 (S.D.N.Y. Sept. 6, 2022) ("Courts have consistently held that mere speculation is insufficient to withstand a motion to dismiss.").[8]

Accordingly, the complaint is dismissed as against OHP, UHIC, UnitedHealthGroup Incorporated and OHPNY.

---

[8] Plaintiffs also state that Defendants have not filed a Rule 7.1 disclosure statement.  Dkt. No. 36 at 11.  But Defendants filed such statements on January 27, 2025, and they do not support Plaintiffs' claims.  Dkt. Nos. 37–41.

### III.    Defendants' Claims

Finally, Defendants argue that the complaint should be dismissed for failure to identify the Plan provisions that OHI has violated.  Dkt. No. 28 at 7–8.  Defendants are correct that Plaintiffs' failure to identify such provisions is fatal to their claims for reimbursement of benefits they are purportedly owed under the Plan.  However, Plaintiff also alleges that Defendants have violated the procedural protections of ERISA contained in 29 U.S.C. § 1133(1).  Dkt. No. 1 ¶ 101.  Plaintiffs have adequately pled this procedural claim.  Therefore, the motion to dismiss is granted in part and denied in part.  Plaintiffs will have leave to replead their substantive claims for reimbursement if they so choose.

An ERISA denial-of-benefits claim turns "on the interpretation of terms in the plan at issue." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989); *see Feifer*, 306 F.3d at 1210 (quoting *Strom,* 202 F.3d at 142); *accord Devlin v. Empire Blue Cross & Blue Shield,* 274 F.3d 76, 82 (2d Cir. 2001).  "[A] denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan," in which case the denial is reviewed for abuse of discretion.  *Firestone*, 489 U.S. at 115.  "Because a claim for benefits under ERISA is the assertion of a contractual right, a plaintiff must . . . 'specify the relevant Plan *provision* that would entitle it to the requested relief.'"  *Da Silva Plastic & Reconstructive Surgery, P.C. v. Empire Healthchoice HMO, Inc.*, 2025 WL 240917, at *6 (E.D.N.Y. Jan. 17, 2025) (quoting *Gordon Surgical Grp., P.C. v. Empire HealthChoice HMO, Inc*., 724 F. Supp. 3d 158, 170 (S.D.N.Y. 2024)); *see New York State Psychiatric Ass'n*, 798 F.3d at 135 (holding that complaint was properly dismissed where it failed to identify the provisions of the Plan and how they were violated); *Park Ave. Aesthetic Surgery*, 2021 WL 665045, at *8 (same); *N. Jersey Plastic Surgery Ctr., LLC v. 1199SEUI Nat'l Benefit Fund*, 2023

WL 5956142, at *6 (S.D.N.Y. Sept. 13, 2023) (same); *Michael E. Jones M.D., P.C. v. UnitedHealth Grp., Inc.*, 2020 WL 4895675, at *3 (S.D.N.Y. Aug. 19, 2020) (same).[9]

Plaintiffs have not stated a claim for denial of benefits because they have not identified "anything in the plans [] that entitled [them] to a particular benefit [they] sought to enforce." *Id.* (quoting *Guerrero v. FJC Sec. Servs. Inc.*, 423 F. App'x 14, 17 (2d Cir. 2011) (summary order)). The complaint alleges that the relevant doctors and facility were accredited, Dkt. No. 1 ¶¶ 25–30, specifies the services they provided, *id.* ¶ 31, states that invoices were submitted under the Plan, *id.* ¶ 38, and makes clear that other than a check for $147.06, the invoices were not paid, *id.* ¶¶ 68, 93, 96. The complaint criticizes OHI's denial of Plaintiffs reimbursement for Dr. Rizk's claim on the ground that it was "not separately reimbursable in this setting," *id.* ¶¶ 89, 93, and for Dr. Scolnick's claim based on the "discretionary clause," *id.* ¶ 96, and it alleges in a conclusory fashion that OHI acted contrary to the Plan terms, *id.* ¶¶ 100–111. But the complaint does not set out any provisions of the Plan that required OHI to pay for Jane Doe's care. The Court may not simply assume that because Plaintiff went to an accredited doctor, OHI was required to pay her claims. The only specific Plan provision pointed to by Plaintiff is the "discretionary clause," which Plaintiff explains only by stating that it contains the words "we may develop standards" and "standards are to determine whether . . . surgery was medically necessary to treat Your illness or injury." *Id.* ¶ 63.[10] Nothing about these words suggests that the Plan was required to cover the care provided by Dr. Scolnick or Dr. Rizk. Based solely on

---

[9] Plan administrators are legally obligated to provide plan participants and beneficiaries with plan documents, including plan terms, both periodically and upon request; annual reports are also available through the Department of Labor. *See Michael E. Jones M.D., P.C.*, 2020 WL 4895675, at *3 n.6 (citing 29 C.F.R. § 2520.104b-1; 29 C.F.R. § 2520.104b-2; 29 C.F.R. § 2520.102-3).

[10] Plaintiff's complaint also did not attach the Plan, which was provided by Defendants when they filed the motion to dismiss. Dkt. No. 1; Dkt. No. 27-1.

the allegations in the complaint, there is no basis to hold that Defendants "failed to follow the terms of the plan," "failed to follow the plain language of the Plan," or "failed to apply the Plan provisions consistently," because there are no allegations regarding what the Plan terms are or how they were not followed here.  *Id.* ¶¶ 100–102; *see Da Silva Plastic & Reconstructive Surgery*, 2025 WL 240917, at *7 (dismissing complaint that "completely fail[ed] to specify provisions at issue and plausibly allege any specific provision was violated").  Plaintiff's claims for reimbursement of Jane Doe's care under the Plan must be dismissed.[11]

However, Plaintiffs have stated a claim that OHI failed to follow ERISA's procedural requirement that they set forth "the specific reasons for [the] denial[s], written in a manner calculated to be understood by the participant."  Dkt. No. 1 ¶ 101 (citing 29 U.S.C. § 1133(1)).  "[T]o provide a beneficiary with 'full and fair review' under ERISA, a plan administrator's written notice of denial 'must be comprehensible and provide the claimant with the information necessary to perfect h[is] claim.'"  *Doe v. Deloitte LLP Grp. Ins. Plan*, 2025 WL 586670, at *4 (S.D.N.Y. Feb. 24, 2025) (quoting *Burke v. Kodak Ret. Income Plan*, 336 F.3d 103, 107–09 (2d Cir. 2003)).  The purposes of this requirement are to "provide the member with information necessary for him or her to know what he or she must do to obtain the benefit" and, if necessary, to "enable the member effectively to protest that decision."  *Juliano v. Health Maint. Org. of New Jersey, Inc.*, 221 F.3d 279, 287 (2d Cir. 2000).  The "typical remedy" for a violation of an

---

[11] Plaintiffs rely upon *Neurological Surgery, P.C. v. Oxford Health Plans (NY), Inc.*, 2020 WL 13931876, at *5 (E.D.N.Y. Oct. 30, 2020); *see* Dkt. No. 36 at 14-15.  However, "that decision denied the defendant's motion to dismiss pursuant to Rule 8; it did not address whether identifying specific portions of plan documents is necessary to state a plausible claim for relief under section 502(a)(1)(B) and to satisfy Rule 12(b)(6)."  *N. Jersey Plastic Surgery Ctr.*, 2023 WL 5956142, at *7.  Moreover, "the Court affords less weight to *Neurological I* considering numerous more recent holdings affirming the rule that a claim is defective where it fails to identify the relevant provision in an applicable plan document."  *Da Silva Plastic & Reconstructive Surgery*, 2025 WL 240917, at *7.

ERISA beneficiary's procedural rights is "remand for further administrative review." *Krauss v. Oxford Health Plans, Inc*., 517 F.3d 614 (2d Cir. 2008); *see Pastore v. Witco Corp. Severance Plan*, 196 F. App'x 18, 21 (2d Cir. 2006) (summary order) ("When a plan administrator fails to provide an adequate reasoning, the proper remedy in an ERISA case is to remand for further findings or explanations, unless it is so clear cut that it would be unreasonable for the plan administrator to deny the application for benefits on any ground.").

      Plaintiffs have stated a claim that the information provided by OHI here was not provided in a comprehensible manner that would allow a beneficiary to "know what he or she must do to obtain the benefit" or "effectively . . .protest th[e] decision." *Juliano*, 221 F.3d at 287.  As to Dr. Rizk's claim, OHI stated that the claim was not "reimbursable in this setting" and cited section XXVII, subsection 22 of the COC.  *Id.* ¶¶ 63, 93.  However, subsection 22 explains nothing, simply referencing unspecified "standards" that were never provided to Plaintiffs, despite request.  Dkt. No. 27-1 at 101; Dkt. No. 1 ¶ 88.  Based on the information allegedly provided, there would be no way for the participant or any person to understand what could be clarified about the claim or "setting" to obtain the benefit.  Plaintiffs plead that they have no way to effectively protest the decision, because it is unclear why the benefit is being denied.  OHI's explanation of Dr. Scolnick's claim similarly cites to unspecified standards within subsection 22, and moreover fails to clarify the interplay between such "standards" and the statement that the claim was paid in the amount of $147.06 because "[f]or Facilities, the Allowed Amount will be 140% of the Medicare Amount."  *Id.* ¶¶ 81, 96.  These explanations are not sufficient to "facilitate 'meaningful dialogues between plan administrators and plan members,' and permit effective review." *Munnelly v. Fordham Univ. Fac.*, 316 F. Supp. 3d 714, 736 (S.D.N.Y. 2018) (quoting *Juliano*, 221 F.3d at 288).

Plaintiffs have not properly alleged that they are entitled to benefits under the Plan. However, they have alleged that OHI has failed to adequately explain why they are *not* entitled to benefits.  Such allegations, if proven, would not entitle Plaintiffs to reimbursement for Jane Doe's care, but could entitle them to a remand for the administrator to provide further explanation.  *See Juliano*, 221 F.3d at 287–288 (rejecting argument that procedural irregularities would automatically entitle an ERISA Plaintiff to benefits); *Deloitte*, 2025 WL 586670, at *6 (remanding case to the claims administrator with instructions to specifically address procedural deficiencies).  Additionally, if Plaintiffs so choose, they may replead their entitlement to benefits claim with reference to the terms of the Plan.

## CONCLUSION

The motion to dismiss is GRANTED IN PART AND DENIED IN PART.  The complaint is dismissed with prejudice as to defendants OHP, UHIC, UnitedHealthGroup Incorporated, and OHPNY.  The motion to dismiss is denied as to Plaintiff's allegations that OHI failed to provide information required by 29 U.S.C. § 1133(1).  The motion to dismiss is otherwise granted without prejudice.

Plaintiffs shall have until May 5, 2025, to file an amended complaint.  If no amended complaint is filed by that date, the Court will assume Plaintiffs elect to proceed on the current complaint.

The parties shall appear for a telephonic conference on May 8, 2025, at 11:00 a.m. Parties are directed to dial into the Court's new teleconference number at 646-453-4442, use conference ID# 358639322, and follow the necessary prompts.  By one week prior to the conference, the parties shall jointly submit to the Court a proposed Case Management Plan and Scheduling Order.  The Parties shall consult the Court's Individual Practices in Civil Cases for further guidance.

The Clerk of Court is respectfully directed to close Dkt. No. 26.

SO ORDERED.

Dated: April 14, 2025
       New York, New York

_____
LEWIS J. LIMAN
United States District Judge